IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEREK L. CARRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-0025-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for supplemental security income benefits. The Commissioner's decision is affirmed.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

This case represents Plaintiff's fourth application for disability or SSI benefits. The clam was filed in June 2010 with an alleged onset date of November 19, 2006. The onset date was later amended to May 21, 2010 to comport with the prior denials. The

ALJ originally rendered an unfavorable decision in March 2012, but the Appeals Council vacated the decision and remanded for reconsideration. R. at 97-98. The ALJ conducted another hearing and issued another unfavorable decision on June 12, 2013. The Appeals Council declined to review the decision, so the ALJ's June 2013 decision stands as the Commissioner's final decision.

Plaintiff was involved in a car accident in November 2006 which resulted in a fracture and nerve damage to his left (non-dominant) wrist. These injuries necessitated surgery. He has also experienced degenerative joint disease/avascular necrosis in both knees and his left shoulder, necessitating surgery in each joint. He underwent surgery in November 2010 (right knee), November 2012 (left shoulder), and February 2013 (left knee).

The ALJ found Plaintiff retained the residual functional capacity to perform light work except that he could only lift or carry five pounds with his left arm/hand and could not use his left arm/hand to push or pull. He was further limited in the use of his left hand in that he could "only occasionally grasp and cannot finger." Plaintiff was found able to sit, stand or walk up to six hours a day. Finally, the ALJ limited Plaintiff to "repetitive work with no interaction with the general public and no detailed instructions/tasks." R. at 17.

Plaintiff presents a multitude of arguments that revolve around one or both of two central themes: that the ALJ erred in failing to believe him and in failing to accord appropriate weight to his treating doctors. For ease of discussion, the Court will discuss these issues on a malady-by-malady basis, but before doing so the Court will set forth the appropriate legal standards. Analysis of a claimant's subjective complaints of pain is governed by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective

2

> complaints solely because the objective medical evidence
> does not fully support them.
>
> The absence of an objective medical basis which supports
> the degree of severity of subjective complaints alleged is just
> one factor to be considered in evaluating the credibility of the
> testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to
> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
> > 1. The claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. Plaintiff's insinuations to the contrary, there is no requirement that the ALJ presume the claimant is truthful. Similarly, Plaintiff contends the ALJ should have weighed the facts differently by attaching more weight to some things and less weight to others, but the Court cannot substitute its judgment of the facts for the ALJ's. E.g., Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003). The Court must confirm that the law permits consideration of the factors relied upon, but the evaluation of those factors is for the ALJ. With respect to a treating physician's opinion, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

The Court now considers Plaintiff's arguments. Plaintiff argues the ALJ failed to properly account for his mental and emotional impairments because he did not (1)

3

address Plaintiff's problems with confusion and impaired memory or defer to his social worker's assessment and (2) incorrectly stated Plaintiff had not been hospitalized for treatment. A social worker is not a medical expert, and any opinion offered by a social worker is not a medical opinion. Moreover, the social worker's opinion indicated Plaintiff was "extremely limited" – defined to mean the "[i]mpairment level preclude[s] useful functioning in this category – in virtually every functional category listed. R. at 849-50. This degree of limitation conflicted with Plaintiff's daily activities. Plaintiff stresses that his activities did not constitute substantial gainful activity and this may be; however, his activities conflicted with the extreme limitations suggested by the social worker. Furthermore, the ALJ found the social worker's opinion conflicted with the social worker's own records from his meetings with Plaintiff. R. at 23-24. The evidence of Plaintiff's confusion and memory problems consists of isolated references in the record. In addition to sporadic nature of this complaint, Plaintiff's activities belie the significance of these conditions. Finally, while plaintiff was hospitalized at Two Rivers Psychiatric in 2000, this was long before the alleged onset date and Plaintiff has not been hospitalized since.

Plaintiff contends the ALJ erred in discounting Plaintiff's testimony about his hand/wrist limitations. To the contrary: the RFC found by the ALJ contains significant restrictions on Plaintiff's ability to use his left hand, and it is not clear what further limitations Plaintiff believes should exist. Regardless, Plaintiff erroneously contends the ALJ discounted his testimony because of his inability/failure to get treatment: the ALJ addressed a multitude of diagnostic tests (including x-rays, EMGs, and nerve conduction studies) in ascertaining Plaintiff's RFC. The ALJ also noted that when seeking treatment for his left knee and left shoulder, Plaintiff made no complaints about his wrist. R. at 19. These facts supported the ALJ's findings.

Plaintiff argues the ALJ understated the effect of Plaintiff's knee problems and erred in not according sufficient deference to the opinion of Dr. James Brannon, the doctor who operated on Plaintiff's shoulder and knees. Starting with the issue of Dr. Brannon first, the Court notes that Dr. Brannon prepared his Medical Source Statement ("MSS") on February 20, 2013. R. at 852-53. This is significant because Plaintiff had

surgery on February 13, 2013 – a fact noted by Dr. Brannon on his MSS where he indicates that the opinions rendered therein relate to Plaintiff's present condition. Needless to say, the limitations Plaintiff faced immediately after knee surgery do not necessarily correlate to the limitations Plaintiff would face after he recovered from that surgery. In ascertaining Plaintiff's RFC the ALJ considered the results of surgery on Plaintiff's *right* knee in November 2010 – a reasonable course, given that the procedure was the same as the one performed on Plaintiff's left knee in February 2013. The ALJ also reviewed Dr. Brannon's reports regarding Plaintiff's condition following the November 2010 surgery (as well as the November 2012 shoulder surgery) and noted that Dr. Brannon indicated Plaintiff had improved markedly. R. at 19-20. These facts provided a good reason for not construing Dr. Brannon's February 2013 MSS as a statement reflecting Plaintiff's condition once he recovered from the left knee surgery.

Finally, Plaintiff's contends that the ALJ did not account for his back problems. Plaintiff has augmented his argument by attaching a two-page report from an MRI conducted in May 2014. Plaintiff cannot add evidence to the administrative record in this manner, so the Court will not consider this report. Focusing on the administrative record reveals a report of an x-ray performed in July 2010. According to Dr. Mark Greenfield, the x-ray revealed degenerative disc disease with loss of disc height at L5-S-1 without end plate changes. Dr. Greenfield recommended an MRI, but one was never done. R. at 574. Plaintiff insinuates the ALJ should have considered his diminished ability to seek treatment into account, but after the MRI was recommended in July 2010 Plaintiff had two knee surgeries and a shoulder surgery – yet this remains the only medical record he references about his back. The ALJ was entitled to consider the paucity of treatment and records in evaluating the seriousness of this condition. R. at 19.

The Court's review fails to demonstrate any legal error on the ALJ's part. The ALJ considered facts he was entitled to consider, and the weighing of those facts is the

5

Case 4:14-cv-00025-ODS   Document 21   Filed 12/16/14   Page 5 of 6

ALJ's task, not the Court's. The Court concludes there is substantial evidence in the Record as a whole to support the ALJ's decision, so the denial of benefits is affirmed.

IT IS SO ORDERED.

                                          /s/ Ortrie D. Smith
                                          ORTRIE D. SMITH, SENIOR JUDGE
DATE: December 16, 2014         UNITED STATES DISTRICT COURT